1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division


- - - - - - - - - - - - - - - - - - - -
                                     )
ROYCE SOLOMON, individually          )
and on behalf of all others          )
similarly situated, et al.,          )        CIVIL ACTION NO.
                                     )          4:17cv145
        Plaintiffs,                  )
                                     )
v.                                   )
                                     )
AMERICAN WEB LOAN, INC.,             )
et al.,                              )
                                     )
        Defendants.                  )
- - - - - - - - - - - - - - - - - - - -




        TRANSCRIPT OF VIDEO TELECONFERENCE PROCEEDINGS
                    **(Motion Hearing)**

                    Norfolk, Virginia

                    June 24, 2020




BEFORE:   THE HONORABLE HENRY COKE MORGAN, JR.
          United States District Judge

Carol L. Naughton, Official Court Reporter

APPEARANCES: (Via Zoom.gov)

        BERMAN TABACCO
        By:  Kathleen M. Donovan-Maher
                - and -
        CONSUMER LITIGATION ASSOCIATES
        By:  Leonard A. Bennett
                - and -
        GRAVEL & SHEA PC
        By:  Matthew B. Byrne
                - and -
        MICHIE HAMLETT
        By:  David W. Thomas
              Counsel for the Plaintiffs


        O'HAGAN MEYER PLLC
        By:  Charles K. Seyfarth
            Elizabeth S. Turner
                - and -
        WILMER CUTLER PICKERING HALE & DORR LLP
        By:  Jonathan Paikin
            Molly Jennings
            Thomas Strickland
                - and -
        ROSETTE LLP
        By:  Saba Bazzazieh
                - and -
        WILLIAMS & CONNOLLY LLP
        By:  Rachel S. Rodman
            Robert M. Cary
            Simon A. Latcovich
        PROSKAUER ROSE LLP
        By:  Christopher E. Ondeck
                - and -
        FAEGRE DRINKER, BIDDLE & REATH LLP
        By:  Mark H. M. Sosnowsky
            Matthew J. Fedor
              Counsel for the Defendants

Carol L. Naughton, Official Court Reporter

(Proceedings commenced at 11:10 a.m.)

THE CLERK:  Civil Action Number 4:17cv145, Royce Solomon, et al., individually and on behalf of all others similarly situated, vs. America Web Loan, Inc., et al.

For the plaintiffs, Mr. Thomas, are you and counsel ready to proceed?

MR. THOMAS:  I am.

THE CLERK:  For defendant, Mr. Seyfarth, are you and counsel ready to proceed?

MR. SEYFARTH:  We are, Your Honor.

THE COURT:  All right.  I have the documents you submitted in support of seeking the preliminary approval of the settlement and the class action status.  It appears that everyone you've been able to locate, or every person who made a loan that you've been able to locate, has had their situation examined independently.  Is that correct?

MR. THOMAS:  Yes, Your Honor.  David Thomas for the plaintiffs.

The defendants kept records, basically, I would say complete and thorough records, going back to January 1 of 2012.  Those records are electronic, and they are the basis for the roughly 576,000 members of the class as well as the certification that 95 percent or more of the affected class members will get direct e-mail notification at the e-mail addresses that they corresponded with American Web Loans at.

4

The only slight issue, I guess, is that the loans prior to that date, so loans that are more than eight years old at this point -- there is some contact information, but it's to address that deficiency that the 15,000 internet advertisements as well as other methods of reaching them, including the settlement website, would be utilized.

THE COURT:  All right.  They actually began in 2010; is that right?

MR. THOMAS:  Yes, sir.

THE COURT:  All right.  So you have everything from 2012 forward, and you're supplementing that with the notices that you propose to send based on all available information as to borrowers between 2010 and 2012?

MR. THOMAS:  Yes, sir.  I may have misspoke.  I may have said 15,000.  I should have said 15 million Google and Facebook advertisements to inform those who do not get direct notification of the settlement and its terms and to direct them to the settlement website.

THE COURT:  All right.  Well, the very lengthy document that outlines all of the individual context, of course, will be part of the file.  A document of that length, I'm not going to attach it to the order, but we're going to incorporate the order and incorporate that pleading that contains all that information into the order, and of course, that will be supplemented when you come to the final

Carol L. Naughton, Official Court Reporter

settlement.

Now, I want to notify you at this time that I may not be available at the time of the final settlement, as my retirement is fairly imminent.  But we've got to get the clock started, so I assume that you wanted me to go ahead with the preliminary rulings so you can get the clock started on the notifications and other steps you have to take in order to petition the Court for a final settlement.  Is that correct?

MR. THOMAS:  Yes, Your Honor.  The proposed order that was submitted has all of the timing in it.  And basically, all of them key off the preliminary approval order.  I think there are a total of, I think, five blanks, and assuming that the Court enters a preliminary approval tomorrow, the first of those dates would be July 3rd, which is the date by which we would provide notice to the settlement class members, and as the Court said, that's what touches off the rest of the deadlines.

THE COURT:  All right.  Does the defendant wish the Court to proceed with the entry of the proposed order granting preliminary approval?  Do you want me to proceed with that, as well?

MR. PAIKIN:  Good morning, Your Honor.  This is Jonathan Paikin.  I represent AWL, and I'm authorized to speak for all of the defendants, and yes, we would like the

6

Court to proceed and enter its order.

THE COURT:  Okay.  We've reviewed the motion and obviously have not looked at every single borrower that's individually noted, but as I understand it, you separated the group that's before the Court at this time into those who received a proposed tax payment and those who received a cancellation of the loans.

Now, how are those calculations going to be handled when the new class members are identified through the notice procedure?

MR. THOMAS:  Yes, Your Honor, David Thomas for the plaintiffs again.

I may be misunderstanding the Court's question, and so I apologize, but there aren't anticipated to be any new class members that have not already been identified.  Because of the records maintained by defendants, I think both sides believe we have a firm handle on who all of the class members are because AWL knows to whom it lent money in the intervening nine-and-a-half or ten years, now.

And so it's really just -- the purpose of the notice -- because payment to the identified class members is otherwise automatic, and so the purpose of the notice is, one, to make sure that we still have correct contact information, and, two, there is a small subset of borrowers from pre-December 31, 2011 -- so that 2010 and 2011 period --

Carol L. Naughton, Official Court Reporter

who are automatically eligible for a set cash payment but can, if they have supporting documentation, be included in the pro rata distribution that all of the 2012 and forward class members would receive.

THE COURT:  In other words, there's enough money set aside to pay those people without changing the cash payment and loan forgiveness provisions as to the classes before the Court.  Is that what you're saying?

MR. THOMAS:  Yes, sir.  I think maybe they are included in the class that is before the Court, and the only question is what payment that small subset receives.

THE COURT:  But you have enough funds in the proposed settlement to cover them?

MR. THOMAS:  Yes, sir.

THE COURT:  Okay.  Do I understand that you don't expect any additional potential numbers of the final group to be identified through the notice procedure; you're just doing that out of an abundance of caution?

MR. THOMAS:  Yes, sir, that's correct.  And it's almost entirely to address those borrowers who borrowed more than nine years ago, to make sure that the records are complete as to that small subset.

THE COURT:  All right.  Well, the order that you've submitted has a number of blanks in it.  The first one says file with the Court on April blank 2020.  We haven't filled

those in.  But that's easy enough to determine what that date is.

And you say the first date that will accrue, if we enter the order tomorrow, will be July -- well, let's see. The second blank I notice is in paragraph 18.  Is there one between the introductory paragraph and paragraph 18?

MR. THOMAS:  I'm looking.  The first date in the proposed order -- I think the first blank should be the deadline for providing notice to settlement class members. That would be paragraph 13.

And then the next one is the deadline for the settlement class administrator, which would be paragraph 14. I'm sorry, that one is already filled in because it keys off. Sorry, Your Honor.

Yes, the next blank is preliminary approval order, 17 and 18, and we would propose August 10th for that date.

THE COURT:  All right.  I'll write that in, August 10, 2020.

The next one, paragraph 31, final approval.

MR. THOMAS:  Yes, Your Honor.  There should be one in paragraph 24, which is the deadline to file written objections.

THE COURT:  Paragraph 24.  That's the one I just put in.  August 10th, 2020, paragraph 24.

MR. THOMAS:  I apologize, Your Honor, I'm sure

Carol L. Naughton, Official Court Reporter

that's my fault.

So there was a blank in paragraphs 17 and 18, which was the deadline for submission of requests for exclusion. That's what I was referring to as the August 10 date.

And then in paragraph 24, we would propose September 21st as the deadline to file written objections.

THE COURT:  All right.  It's paragraph 18 that should be August 20th.

MR. THOMAS:  August 10 is what we're proposing, Your Honor.

THE COURT:  August 10.

All right.  The next one is 24, and you're saying that should be September what, now?

MR. THOMAS:  September 21st, Your Honor.

THE COURT:  All right.  What is the next one?

MR. THOMAS:  And then the next blank, Your Honor, is in paragraph 31, and that's the date for the final approval hearing.

THE COURT:  All right.  Well, when should that be?

MR. THOMAS:  We're proposing October 21st, but now, I guess, with the understanding that that may need to be based on a different calendar.

THE COURT:  It may need to be; I can't say.

So that's October what?

MR. THOMAS:  21st, Your Honor.

Carol L. Naughton, Official Court Reporter

THE COURT:  All right.  I'll put at 11:00 a.m.

Is there anything else?

MR. THOMAS:  I don't believe so, Your Honor.

THE COURT:  And you say your calculations are based on the Court entering this order tomorrow?

MR. THOMAS:  Yes, sir.

THE COURT:  All right.  Well, I'm going to date the order tomorrow.  That would be the 25th.

How was the determination made as to who would get a cash payment and who would get a loan cancellation?

MR. THOMAS:  Your Honor, they weren't necessarily segregated out.  There is some overlap between the two. People who made interest payments beyond a certain threshold during the class period are eligible for and will receive the cash payment, and then those with outstanding loans in the AW portfolio will have their loan canceled, and so there is some overlap between the two.

THE COURT:  What do you mean by "overlap"?  There's some who will get a cash payment plus get their loan canceled?

MR. THOMAS:  Yes, Your Honor.

THE COURT:  All right.  So there are three classifications:  those who will get strictly a cash payment, those who will get a cash payment plus cancellation of the loan, and those who will just get a cancellation of the loan.

Is that right?

MR. THOMAS:  Yes, sir.

THE COURT:  And how did you make the distinction as to who would get which of those three forms of relief?

MR. THOMAS:  There was -- there wasn't really a process of distinguishing between them.  It was -- and I'll start from the back end.  Everyone who had a still-outstanding loan qualified for loan cancellation, and that was one distinct group.  Then --

THE COURT:  When you say "loan cancellation," what does that mean?  Does that mean that the debt is extinguished, that they don't have to pay any more?

MR. THOMAS:  Yes, Your Honor.

THE COURT:  And that's regardless of what the balance is?

MR. THOMAS:  Yes, Your Honor.

THE COURT:  All right.  And then you had some who -- what did you do in determining who got that relief?  Was that based on how much they paid and allocating it -- allocating all of their payments to principal as opposed to interest?  Or how did you do that?

MR. THOMAS:  Your Honor, there was a calculation made regarding, as I understand it, what their interest payments were relative, roughly speaking, to what they otherwise should have been -- and that's my words, not the

formal mathematics -- and then based on how much they paid in that category, they will receive a pro rata share of the cash portion of the settlement.

THE COURT:  Plus cancellation of the debt?

MR. THOMAS:  If they still have an outstanding loan, yes, Your Honor.

THE COURT:  And you say what the interest "should have been."  How much should the interest have been?

MR. THOMAS:  Your Honor, I apologize, I was looking for the exact calculation to see if I had it in the paper before me.

THE COURT:  Does anyone have that?

MR. PAIKIN:  Your Honor, this is Jonathan Paikin, if I may.  I think that the settlement agreement addresses this. There really are only -- so just sort of stepping back for a minute, all of the class members are eligible for a cash-payment award.

And the way that that cash payment is going to be determined will be on a pro rata basis to all of the people that submit claims, and under the settlement agreement, the way that that amount is determined will be based on the amount of interest that they paid.

And that's in the settlement agreement on Page 22 in Section VI(b)(ii).

THE COURT:  Can you get that for me, Brandan?

Carol L. Naughton, Official Court Reporter

13

MR. PAIKIN:  Sorry, Your Honor, I didn't hear what you said.

THE COURT:  I was talking to my law clerk.  I just wanted that section that you just mentioned.

MR. THOMAS:  Your Honor, and the way the calculation was done, it was interest paid above the principal.  So whatever portion of payments they made beyond the principal balance is being considered as the portion of their payment which -- which figures them in for the pro rata calculation.

THE COURT:  In other words, when you use the term the interest they "should have paid," what that means is zero interest.

MR. THOMAS:  Yes, sir, but I understand that --

THE COURT:  All the interest has been subtracted to determine the amount of their cash payment.

MR. THOMAS:  Yes, sir.  So just to use a real quick example, if they had a $2,000 loan and paid $3,000 total, then $1,000 would be the figure we would use for the pro rata calculation.

THE COURT:  Okay.  So those who paid off their loans, I guess they'd just get -- they would be paid back the total amount of interest they paid on the loan.  They would be the ones who would get only a cash payment.

MR. THOMAS:  Yes, sir.  Whatever payment they made in excess of the principal, yes, sir.

Carol L. Naughton, Official Court Reporter

THE COURT:  All right.  Now, is there enough in the settlement funds to pay all that back?

MR. THOMAS:  I think the answer is we don't exactly know, but that's why the settlement agreement talks about receipt of a pro rata portion; that if the amount of interest, the amount beyond the principal exceeds, then it would be a pro rata distribution.

THE COURT:  Well, based on the size of the class at this point, is there enough cash to refund all the interest?

MR. THOMAS:  I think the -- I apologize, Your Honor, I don't know whether or not I can answer that in an easy "yes" or "no."

Right now, the calculation is that it's going to be a pro rata because more -- the class members paid more beyond principal than the $65 million in cash that's going to be distributed.

THE COURT:  How much more?

MR. THOMAS:  I don't know the answer to that, Your Honor.  I apologize.

THE COURT:  Well, I think that's something I should know.

Can anybody supply that figure?

I'm not hearing anything.  So I assume nobody can supply that figure.  I mean, with all the work that's been done looking at each loan individually, I would have assumed

15

we would know what that figure is.

MR. PAIKIN:  Your Honor, this is Jonathan Paikin for the defendants.

The way that the settlement was constructed, there's going to be a settlement fund that is going to exist of the $65 million.  Every person that obtained a loan from AWL is eligible for a cash award.  Anyone who submits a claim will get a payout from that settlement fund.

THE COURT:  I understand that, but the question is, is there enough in the fund to pay off all of the interest paid by the settlement group or not?  And apparently, there isn't.  But I'd like to know what the difference is between the total interest paid and the $65 million settlement fund.

I don't see how I can approve that without that information -- approve the settlement without that information.  I mean, it could be that they might be getting 10 cents on the dollar or 90 cents on the dollar.  I have no way of knowing.

MR. PAIKIN:  Well, Your Honor, the way that the agreement works, it would depend on how many people submit claims, and so we can't really answer that question until we've gone through the claims process because we need to see how many of the eligible members submit a request for payment.

Once the settlement administrator knows how many

people have made an award, he will be able to do the calculation. And it's possible -- and the settlement contemplates this -- that there will be more money left in the fund after all those people are paid, and in that event, there would be an award -- if there's a residual amount, then the award would go to the Virginia Legal Aid, I believe is there.

It is also possible, however, that there may be more people that submit claims than the $65 million that's available to pay them, which is a very significant amount, and in that event, the amount that they would be -- they would receive is going to be determined on a pro rata basis doing a calculation based on the number of claims that were submitted and the amount of interest that they paid.

THE COURT: Well, that's obvious, Counsel. I understand that. But it seems to me that at this point in the proceeding, even though this is a preliminary order, that I should know the difference between the interest paid by the term "class members" and the settlement fund because it's been represented that we don't really expect there to be that many additional claims filed.

Is that something that nobody has looked at, is the total amount of interest paid by the current class members? I did not go through the individual analysis of each claim, as I said. So I don't know whether that was done or not, but

17

with the number of claims, I couldn't -- there's not enough hours in a day to go through every one of those claims. But it appeared that considerable work had been done to look at them individually.

And what I'm asking is, has that been done? Has anybody looked at each individual claim to see how much interest they paid?

MR. THOMAS: Your Honor, David Thomas again. And I don't know -- I think the answer to that question may not be -- or the answer to that question may be "no," but I think the anticipation was that that issue, whether or not the settlement proceeds are adequate, is one that -- or ultimately adequate, is one that the Court would address at final approval because at that point we'll know how many claims there are and the Court will be able to determine whether or not the settlement funds are, in its opinion, adequate to pay the claimants.

And at that point, the parties would be able to tell the Court, Judge, we've had 65,000 claims with a total of -- I'm making up numbers now -- but for a total of $100 million of what we term "interest," payments beyond principal, and so each of them is getting 65 cents on the dollar at that point.

However the math ends up working out, that's the ultimate underlying question as to adequacy, and it's one that may be better suited for final approval when we're not

speculating about what might happen but we know what actually has happened.

THE COURT:  Well, that will have to be decided, of course, at the final approval.  But at this stage of the proceeding, all the Court can do is guess at the adequacy of the settlement.  And I'm not going to be around potentially when the final settlement comes before the Court for approval.  So I'll draft my own order.  I'll enter the proposed order, and I'll draft my own order setting forth the absence of that information at this time.

One of the issues that I'm supposed to decide at this juncture is the adequacy of the settlement, and I can't do that.  So I'll enter the settlement order and start the clock running, and I'm going to cite in the settlement order that the Court can make no finding as to the adequacy based on the information available.

But I'll enter the order, which will start the clock running, and the issue of adequacy will have to be dealt with in depth by the judge who presides at the final approval, but obviously, that judge will have to have the information that I've requested.

All right.  Is there anything further?

MR. THOMAS:  Not from the plaintiffs, Your Honor, no.  Thank you.

THE COURT:  Anything further from the defendants?

MR. PAIKIN:  No, Your Honor.

THE COURT:  All right.  Well, I'll enter the proposed order, but I'll also enter my own order.  So I will specifically call to the attention of the judge presiding at the final approval hearing that the Court cannot pass on the adequacy of the settlement based on the information available to the Court at this time.

All right.  The hearing will be adjourned.

(Off the record at 11:45 a.m.)


CERTIFICATION


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.



_____/s/_____

Carol L. Naughton

October 15, 2020